UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MYCHAEL W. [1], | ) |
|     Plaintiff, | ) |
| v. | )    CIVIL NO. 3:22cv675 |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
|     Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Benefits under the Social Security Act. Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since December 7, 2019, the alleged onset date (20 CFR 404.1571 *et seq*.)

3. The claimant has the following severe impairments: right hip osteoarthritis,

        status-post right total hip arthroplasty; obesity; major depressive disorder; generalized anxiety disorder/post-traumatic stress disorder; and attention deficit hyperactivity disorder (20 CFR 404.1520(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no more than occasional balancing, stooping, kneeling, crouching, crawling, climbing of ramps and stairs, but no climbing of ladders, ropes, or scaffolds; no more than occasional overhead reach; no exposure to moving machinery, slippery, wet or uneven surfaces; the claimant requires work free of fast paced production or quota, meaning no tandem work assignments, machine regulated work or hourly production requirements.

6.     The claimant is capable of performing past relevant work as a case worker and social services aide. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.     The claimant has not been under a disability, as defined in the Social Security Act, from December 7, 2019, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 17-24).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed his opening brief on February 28, 2023. On June 16, 2023 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on August 12, 2023. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as

3

follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 4 was the determinative inquiry.

In support of remand, Plaintiff argues that the ALJ failed to properly consider Plaintiff's statements regarding his symptoms, did not explain how limiting Plaintiff to non-fast-paced work was an appropriate accommodation, erroneously concluded that Plaintiff can perform light work, and failed to explain the conclusion that Plaintiff can occasionally reach overhead.

Plaintiff asserts the ALJ should have included more work limitations to accommodate his symptoms of headaches with limits for being off task and absent from work, and dizziness and balance symptoms with unspecified limits. However, Plaintiff cites no objective basis for these limits. *Fanta v. Saul*, 848 F. App'x 655, 659 (7th Cir. 2021) ("Fanta does not point to any objective evidence or medical opinions in the record that support stricter limitations."). The Commissioner correctly notes that Plaintiff improperly attempts to shift the burden of proving his work limits to the ALJ. 20 C.F.R. § 404.1512(a) (Plaintiff has the burden of proving disability). The ALJ cited discussions of the prior administrative medical findings, a psychological medical expert's answers to interrogatories about the impact of Plaintiff's mental impairments and

symptoms on work capacity, objective medical evidence, clinical findings, treatment history, Plaintiff's reports to his treating sources, and activities of daily living, in concluding the evidence failed to support a disabling degree of limits beyond those she found ( Tr. 18-23).

The ALJ also considered the prior administrative medical findings at the initial and reconsideration level from state agency physicians Dr. Brill and Dr. Sands, who reviewed the medical records regarding Plaintiff's impairments, including reports from treating physician Dr. Troyer, neuropsychologist Dr. Elliott, and physical therapist Olga Hodgetts, D.P.T. (Tr. 22, referring to Tr. 69-73, 78-85). The ALJ found unpersuasive Dr. Brill's opinion that none of Plaintiff's impairments were severe, which was at odds with the clinical record and the opinion of Dr. Sands that Plaintiff had several severe impairments that limited him to a range of light work capacity (*Id*.). The ALJ found the opinion of Dr. Sands to be persuasive, noting that the clinical findings in the record showed Plaintiff was able to ambulate, and showed no deficits in Plaintiff's motor strength, sensory responses, or manipulative dexterity (Tr. 22, referring to Dr. Sands' report at Tr. 78-85).

The ALJ also discussed several reports about Plaintiff's walking ability, noting that Plaintiff had undergone a right hip replacement surgery (arthroplasty) in June 2020, and by October 2020, four months after surgery, Plaintiff told his doctor that he was pleased with the result and was doing very well with no issues or complaints at that time (Tr. 20-21, referring to evidence at Tr. 313). Plaintiff stated that his pain was well-controlled and he had resumed most of his daily activities, with Ibuprofen taken as needed for pain (Tr. 313). While his gait was observed as antalgic during the October 2020 follow-up examination (Tr. 313), at other times he demonstrated a normal gait (Tr. 426, 452). The ALJ correctly noted that Plaintiff was able to walk even if it was with a limp (Tr. 21).

The ALJ's work capacity finding for a range of light work with occasional postural limits, and no climbing ladders, ropes or scaffolds, matched that of Dr. Sands (Tr. 19, compare with Tr. 82-83), except that the ALJ also added limits for no more than occasional overhead reaching, and against exposure to environmental hazards such as against operating machinery and exposure to slippery, wet or uneven surfaces (Tr. 19). As the ALJ noted in her decision, no other physician in the record opined that Plaintiff had greater limits (Tr. 22).

Dr. Sands opined that Plaintiff was capable of a range of light work that was similar to the one the ALJ found. The ALJ cited the clinical findings about walking and neurological functioning, including motor strength, sensory responses, and manipulative ability that supported the doctor's work capacity assessment (Tr. 22). Dr. Sands is a medical expert familiar with the Social Security Administration regulations, and provided a detailed explanation and analysis of the evidence. 20 C.F.R. § 404.1513a(b)(1) (state agency medical consultants are highly qualified and experts in Social Security disability evaluation). Thus, there is no error on this point,

Plaintiff asserts that Dr. Sands did not consider the impact that obesity, dizziness, and balance would have on his ability to stand or walk six hours a day. Plaintiff also asserts his left shoulder osteoarthritis was not considered by Dr. Sands. However, Dr. Sands noted that family physician Dr. Troyer saw Plaintiff for left shoulder strain, found left shoulder abduction was 90 degrees, and Plaintiff had pain and clicking with flexion and internal rotation, but nonetheless found Plaintiff had normal strength in his arms and legs (Tr. 79, referring to Dr. Troyer's records at Tr. 245-46, 248). In that same report that Dr. Sands considered, Dr. Troyer listed Plaintiff's extremely obese weight and body mass index (Tr. 245, 247). Furthermore, Dr. Sands considered physical therapy records that discussed Plaintiff's dizziness and balance issues, but found Plaintiff's abilities to ambulate independently and perform work tasks had improved with therapy,

6

and would continue to resolve and be restored to prior levels of function with further therapy goals to improve strength and balance (Tr. 80, referring to physical therapist's records at Tr. 285-86, 289, 298, 300, 302). The ALJ also addressed Plaintiff's balance and dizziness symptoms, as well as obesity, when assessing the impact of Plaintiff's symptoms on his work capacity (Tr. 19-22). Furthermore, the ALJ added limits on occasional overhead reaching to address Plaintiff's shoulder symptoms and exposure to environmental hazards such as moving machinery and slippery, wet and uneven surfaces to address his balance symptoms (Tr. 19). Plaintiff has not shown any greater limits were warranted.

      The ALJ also provided a reasoned basis for her mental work capacity findings. The ALJ sought the assistance of a medical expert, Michael Lace, Psy.D., to review the evidence of Plaintiff's mental impairments and assess any limits on mental work functioning (Tr. 22, referring to Dr. Lace's answers to interrogatories at Tr. 454-63). As the ALJ noted in her decision, Dr. Lace assessed mild limits in the mental function areas of understanding, remembering, and carrying out instructions; interacting appropriately with others; and adapting or managing oneself; and moderate limits in concentration, persistence, or pace (Tr. 22, referring to Dr. Lace's report at Tr. 455-56, 460). Dr. Lace cited specific medical records in support of his findings (Tr. 455-56, and 460, referring to Exhibit 7 at Tr. 459). At the close of his report, Dr. Lace stated his opinion that Plaintiff was limited to no fast-paced production activities (Tr. 463). The ALJ found Dr. Lace's medical source opinion was persuasive, and incorporated that limit into her mental functional capacity finding (Tr. 19, 22). As the ALJ noted, no other physician of record assessed greater limits than those the ALJ assessed based on Dr. Lace's opinion (Tr. 22).

      Plaintiff contests the ALJ's mental work capacity finding, yet he offers no alternate opinion or supported limits on mental work capacity that the ALJ failed to consider or that is supported by

the record. To the extent the ALJ's mental work capacity finding differed from that of Dr. Lace, the ALJ added more limits, such as no tandem work assignments, no machine regulated work, and no hourly production requirements (Tr. 19). These limits when presented to the vocational expert still allowed performance of Plaintiff's past work as a case worker and social services aide, as well as 156,000 representative jobs in the national economy as an information clerk, office helper and routing clerk (Tr. 61-62). Plaintiff has failed to show what additional limits were supported by record where the ALJ found more work limits than any of the physicians, including the psychological medical expert who reviewed the entire record.

Furthermore, Plaintiff does not identify any medical source who limited his work capacity beyond the limited range of light work that the ALJ found. The ALJ's analysis of Plaintiff's work capacity was thorough and reasonably "reflects an adequate logical bridge from the evidence to the conclusions." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

Plaintiff asserts that the ALJ did not limit his capacity based on symptoms of headaches or dizziness. However, the ALJ explained several factors she considered when assessing these symptoms (Tr. 20-23). The ALJ noted Plaintiff's various symptoms, including headaches and dizziness, but noted a lack of corroboration in the medical records about these symptoms, such as abnormal cranial nerves, photophobia symptoms, or observed imbalance due to dizziness (Tr. 21). None of the treating, examining, or reviewing medical sources assessed limits based on headaches or dizziness, and none suggested that Plaintiff would be off task or absent from work due to these symptoms. The ALJ assessed limits against exposure to environmental hazards such as moving machinery and exposure to wet, slippery or uneven surfaces to account for any headaches, dizziness or balance concerns (Tr. 19).

Plaintiff contends that the ALJ erred because he did not include limits for being off task or

8

absent from work due to headaches, but does not identify objective medical evidence to corroborate such limits. Rather, in support of further limits, Plaintiff cites his own interpretation of Dr. Elliott's neuropsychological evaluation findings and his own subjective allegations of headaches, and medical records in which Plaintiff complained of headache symptoms to his treatment providers. But none of Plaintiff's treatment providers limited his work capacity due to headaches or pain complaints, nor has Plaintiff shown an objective basis for finding he would be absent from work or off task for any specific amount of time during the workday due to headaches or dizziness. Additionally, the state agency physician, Dr. Sands, considered Dr. Elliott's evaluation and Plaintiff's complaints of headaches, yet did not limit Plaintiff to the degree that he alleged (Tr. 78-83).

Also, the ALJ added environmental hazard and no more than occasional overhead reaching limits that accommodated Plaintiff's balance and shoulder pain symptoms (Tr. 19). Again, Plaintiff asserts more limits should have been assessed, namely against any overhead reaching, but does not provide any objective medical source opinion that limited him to that degree. Rather, he cites his own interpretation of the medical findings, and attempts to shift the burden of proving disability to the ALJ. 20 C.F.R. § 404.1512(a); *Karr v. Saul*, 989 F.3d 508, 512-13 (7th Cir. 2021) (finding that where plaintiff failed to present evidence supporting disabling functional limitations her appeal "amounts to a failure of proof" because plaintiff "bears the burden of proving that she is disabled."). Clearly, the ALJ discussed Plaintiff's various impairments at length and assessed limits supported by the medical source opinions on work capacity, with added limits beyond those opinions giving Plaintiff the benefit of the doubt (Tr. 19-23).

Moreover, the ALJ posed hypothetical questions to the vocational expert that exactly matched all of the stated work limits in the ALJ's residual functional capacity finding (Tr. 19,

9

61-62). The vocational expert identified, as work Plaintiff could perform, Plaintiff's past work as a case worker and social services aide as well as significant numbers of jobs in the national economy as an information clerk, office helper, and routing clerk (Tr. 23-24, referring to Tr. 62). Thus, the ALJ reasonably found Plaintiff remained capable of performing his past work and in the alternative, significant numbers of jobs despite the supported limits caused by his impairments. *See Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002). As the decision is supported by substantial evidence, it must be affirmed.

## Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby AFFIRMED.

Entered: August 25, 2023.

        s/ William C. Lee
        William C. Lee, Judge
        United States District Court